FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 19, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JULIE CRUME,<br><br>     Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>     Defendant. | No. 4:16-CV-05162-RHW<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 14 & 15. Ms. Crume brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied her application for Disability Insurance Benefits under Title II and her application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C §§ 401-434, 1381-1383F. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth

below, the Court **GRANTS** Defendant's Motion for Summary Judgment and

**DENIES** Ms. Crume's Motion for Summary Judgment.

## I.     Jurisdiction

Ms. Crume filed her application for Disability Insurance Benefits and her

Application for Supplemental Security Income on December 3, 2010. AR 286-303.

Her alleged onset date of disability is May 15, 2005. AR 34, 286, 293.[1] Ms.

Crume's application was initially denied on February 18, 2011, AR 200-03, and on

reconsideration on May 31, 2011, AR 209-13.

Hearings with Administrative Law Judge ("ALJ") James Sherry occurred on

January 21, 2014, AR 53-103, and May 12, 2014, AR 104-44. On July 11, 2014,

the ALJ issued a decision finding Ms. Crume ineligible for disability benefits. AR

31-48. The Appeals Council denied Ms. Crume's request for review on May 27,

2016, AR 8-11, making the ALJ's ruling the "final decision" of the Commissioner.

Ms. Crume timely filed the present action challenging the denial of benefits,

on December 22, 2016. ECF No. 3. Accordingly, Ms. Crume's claims are properly

before this Court pursuant to 42 U.S.C. § 405(g).

---

[1] Ms. Crume asserts that she attempted to amend the alleged onset date to 2010. Counsel for Ms. Crume mentioned at the second hearing they might possibly amend the alleged onset date to March 2010, but did not request to amend the alleged onset date, AR 117-18, but that they thought the original alleged onset date is fine, AR 117. Counsel for Ms. Crume submitted a post-hearing brief requesting the ALJ find Ms. Crume disabled as of October 2010, but did not revise the alleged onset date from May 15, 2005, to October 2010 or any day therein. AR 380. No amendment of the alleged onset date occurred, thus the alleged onset date remains May 15, 2005.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2**

## II. Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsbury v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 & 416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant Crume in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm

simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV. Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here. Ms. Crume was 43 years old at the alleged date of onset. AR 46, 146, 286, 293. She has a high school education and specialized

training in cosmetology. AR 46, 334-35. Ms. Crume is able to communicate in English. AR 46. Ms. Crume last worked in 2010 as a hair dresser. AR 43, 326, 335, 503.

### V.    The ALJ's Findings

The ALJ determined that Ms. Crume was not under a disability within the meaning of the Act from May 15, 2005, through the date of the ALJ's decision. AR 47-48.

**At step one**, the ALJ found that Ms. Crume had not engaged in substantial gainful activity since May 15, 2005 (citing 20 C.F.R. §§ 404.1571 *et seq*., and 416.971 *et seq*.). AR 37.

**At step two**, the ALJ found Ms. Crume had the following severe impairments: diabetes mellitus, hyperthyroidism, mood disorder, anxiety disorder, and substance abuse (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)). AR 37.

At **step three**, the ALJ found that Ms. Crume did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. AR 37.

**At step four**, the ALJ found Ms. Crume had the residual functional capacity to perform light work, with the following limitations: she can occasionally climb ladders, ropes, or scaffolds; she can frequently balance, stoop, crouch, kneel, and crawl; she should avoid concentrated exposure to extreme cold, extreme heat,

excessive vibration, unprotected heights, and use of moving machinery; she can perform simple, routine, and repetitive tasks and some well learned complex tasks; she can perform occasional and simple decision-making; she can have occasional and simple changes in the work setting; she should have no fast-paced production requirements; she can maintain concentration for two-hour segments for simple tasks without more than normally expected brief interruptions; she can have superficial contact with the general public, coworkers, and supervisors. AR 39.

The ALJ determined that Ms. Crume can perform her past relevant work as a cosmetologist. AR 45.

**At step five**, the ALJ found that, in addition to her past relevant work as a cosmetologist and, in light of her age, education, work experience, and residual functional capacity, in conjunction with the Medical-Vocational Guidelines, there are jobs that exist in significant numbers in the national economy that Ms. Crume can perform. AR 45-47. Specifically, the ALJ determined that Ms. Crume can perform the jobs of cashier II, cleaner, housekeeper, and storage facility rental clerk. AR 47.

## VI.    Issues for Review

Ms. Crume argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, she argues the ALJ erred by: (1) failing to fully and fairly develop the record; (2) improperly discrediting

Ms. Crume's subjective complaint testimony; and (3) improperly evaluating the medical and lay witness opinion evidence.

## VII.   Discussion

### A. The ALJ Did Not Fail to Fully and Fairly Develop the Record.

Ms. Crume argues the ALJ failed to meet his duty to develop the record by failing to obtain purported records regarding treatment by Nurse Hanks and without those records there was insufficient evidence to allow for a proper evaluation of Nurse Hanks' opinion.

In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983). The regulations provide that the ALJ may attempt to obtain additional evidence when the evidence as a whole is insufficient to make a disability determination, or if after weighing the evidence the ALJ cannot make a disability determination. 20 C.F.R. § 404.1527(c)(3); see also 20 C.F.R. § 404.1519a. Importantly, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001); *Tonapetyan*, 242 F.3d at 1150. "The ALJ may discharge this duty in several ways, including:

subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Tonapetyan*, 242 F.3d at 1150 (citing *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998); *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)).

The ALJ did not fail to develop the record in the case at hand. The record before the ALJ was neither ambiguous nor inadequate to allow for proper evaluation of the disability claim. Substantial evidence supports the ALJ's decision that Ms. Crume is not disabled. Additionally, counsel for Ms. Crume repeatedly stated that there were no missing medical records that would trigger the requirement to further develop the record and the ALJ discharged any duty to further develop the record by keeping the record open after both hearings to allow supplementation of the record.

At the first hearing in January 2014, counsel for Ms. Crume stated the he had submitted all of the records from the clinic where Nurse Hanks worked. AR 57. Even so, the ALJ continued the hearing to allow Ms. Crume to order any additional records since there were so few mental health treatment records in her case. AR 77-79, 100. The second hearing took place in May 2014, allowing sufficient time to supplement the record, and Ms. Crume did not submit any additional records from the clinic where Nurse Hanks worked. AR 104-44. At the

May 2014 hearing, counsel for Ms. Crume stated again that the record was complete, AR 108, that counsel had contacted Nurse Hanks' office, and Nurse Hanks' office explained that they had provided counsel with all of the treatment records. AR 110. In the same May 2014 hearing, counsel for Ms. Crume again confirmed that he had followed up with all health care providers and had been told there were no additional records. AR 130-31. At the end of the May 2014 hearing, counsel for Ms. Crume confirmed yet again that he had been told by the medical providers that there were no additional records, and counsel requested the ALJ keep the record open to permit Ms. Crume to try and obtain any additional medical records. AR 141-42. Despite repeated affirmations by counsel for Ms. Crume that there were no outstanding medical records, the ALJ agreed to keep the record open for an additional 20 days. AR 141-42. No additional medical records were submitted, and counsel for Ms. Crume indicated that all the mental health records were already in the case file. AR 380.

Ms. Crume was given multiple opportunities to supplement the record with additional notes that purportedly existed addressing Nurse Hanks' treatment of Ms. Crume. However, no additional treatment records were submitted, and counsel for Ms. Crume continually told the ALJ that there were no missing medical records for the clinic where Nurse Hanks worked. Accordingly, the ALJ's duty to further develop the record was not triggered, and if it was triggered, the ALJ discharged

his duty by continuing the hearing and keeping the record open to allow supplementation of the record. *Tonapetyan*, 242 F.3d at 1150.

**B. The ALJ Properly Discounted Ms. Crume's Credibility.**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [her] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id*.

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284. When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180

F.3d 1094, 1098 (9th Cir.1999). Here, the ALJ found that the medically determinable impairments could reasonably be expected to produce the symptoms Ms. Crume alleges; however, the ALJ determined that Ms. Crume's statements of intensity, persistence, and limiting effects of the symptoms were not entirely credible. AR 40. The ALJ provided multiple clear and convincing reasons for discrediting Ms. Crume's subjective complaint testimony. AR 39-44.

First, the ALJ noted multiple inconsistencies with the medical evidence. AR 40-43. This determination is supported by substantial evidence in the record. An ALJ may discount a claimant's subjective symptom testimony that is contradicted by medical evidence. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). Inconsistency between a claimant's allegations and relevant medical evidence is a legally sufficient reason to reject a claimant's subjective testimony. *Tonapetyan*, 242 F.3d at 1148.

Ms. Crume alleges completely debilitating physical limitations, neuropathy in the hands and toes, and an inability to walk for only one or two blocks before needing rest, as well as difficulty with concentration and interacting with others. AR 40, 43, 346, 352. However, physical examinations were generally normal and unremarkable, including full strength, normal gait, and normal range of motion. AR 386, 433, 439, 445, 450, 456, 485, 513, 554, 604, 606, 610, 612, 614, 617, 619, 621, 623, 625, 718, 797, 808. Additionally, providers repeatedly found her to be

cooperative with a normal mood and affect, and that she had normal attention span

and concentration. AR 387, 397, 402, 411, 418, 427, 433, 439, 445, 451, 456, 461,

466, 476, 480, 485, 491, 499, 501-02, 519, 565, 567, 573, 579, 581, 645, 711, 801.

Second, the ALJ noted several pertinent inconsistent statements. AR 43. An

ALJ may rely on ordinary techniques of credibility evaluation such as a witness's

prior inconsistent statements. *Tommasetti*, 533 F.3d at 1039. Specifically, Ms.

Crume stated that she was unable to complete a workday. AR 43, 352. However,

Ms. Crume also repeadately stated that she worked full time as a hairdresser even

after the alleged onset date in 2005 to 2010. AR 43, 335, 326, 470, 503. Ms. Crume

alleged that she has difficulty interacting with others. AR 43, 346. However, she

has also reported that she has no problem getting along with others and her hobbies

include socializing. AR 43, 345, 352. Ms. Crume also stated she is unable to walk

for more than one or two blocks but also reported one of her hobbies is working

out, and that she participates in regular exercise by walking daily for about 45

minutes to one hour. AR 43, 345, 611.

Third, the ALJ noted unexplained gaps in Ms. Crume's treatment history.

AR 43. Specifically, the fact that the record contains no medical or mental health

treatment records from the disability onset date of May 15, 2005, to August 2008.

AR 43. A claimant's statements may be less credible when treatment is

inconsistent with the level of complaints or a claimant is not following treatment

prescribed without good reason. *Molina*, 674 F.3d at 1114. "Unexplained, or inadequately explained, failure to seek treatment . . . can cast doubt on the sincerity of [a] claimant's [] testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Fourth, the ALJ found that Ms. Crume's activities did not support her allegations of total disability. AR 40-44. Activities inconsistent with the alleged symptoms are proper grounds for questioning the credibility of an individual's subjective allegations. *Molina*, 674 F.3d at 1113 ("[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Ms. Crume alleges totally disabling limitations, both physical limitations and mental limitations. However, throughout the relevant period she reported performing household chores such as laundry, dish washing cleaning bathrooms, and caring for her two children. AR 43, 93, 95, 343; *see also Morgan v. Apfel,* 169 F.3d 595, 600 (9th Cir.1999) (claimant's ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child was evidence of claimant's ability to work);  *Rollins*, 261 F.3d at 857 (claim to be totally disabled was undermined by "her daily activities, such as attending to the needs of her two young children, cooking, housekeeping, laundry, shopping, attending therapy and

various other meetings every week, and so forth"). Her reported hobbies include watching television, reading, socializing, and working out. AR 43, 345. She reported participating in regular exercise by walking daily for about 45 minutes to one hour. AR 43, 611. She reported regularly attending church and visiting with her daughter. AR 43, 345. Furthermore, Ms. Crume worked fulltime as a hairdresser after the alleged onset date, and stated that she worked eight hours a day, five days a week at least until December 2010, she walked and stood for eight hours each day, and she lifted up to 20 pounds and 10 pounds frequently. AR 44, 326, 335, 470, 503.

The ALJ reasonably found that Ms. Crume's daily activities contradict her allegations of total disability. The record supports the ALJ's determination that Ms. Crume's conditions are not as limiting as she alleges.

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d at 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). The Court does not find the ALJ erred when discounting Ms.

Crume's credibility because the ALJ properly provided multiple clear and convincing reasons for doing so.

## C. The ALJ Properly Weighed the Medical and Lay Witness Opinion Evidence.

### a. Nurse Hanks

The opinion testimony of Nurse Hanks falls under the category of "other sources." "Other sources" for opinions include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses, and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). An ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996). An ALJ is obligated to give reasons germane to "other source" testimony before discounting it. *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir.1993).

Nurse Hanks completed a mental residual functional capacity statement of Ms. Crume in February 2014. AR 734-37. Nurse Anderson opined that Ms. Crume would only be effective for twenty percent of an eight hour workday. AR 737. The ALJ assigned little weight to the opinion of Nurse Hanks because it is conclusory, provides very little explanation of any evidence relied on in forming the opinion,

and the opinion is inconsistent with the clinical findings of treatment providers. AR 44.

Ms. Crume does not contend that the opinion of Nurse Hanks in the record is not conclusory and unsupported by clinical evidence; rather, Ms. Crume alleges that giving little weight to the opinion was an error because she alleges there are progress notes and office notes created by Nurse Hanks regarding the treatment of Ms. Crume that support this opinion and were erroneously not obtained by the ALJ. However, as stated above, counsel for Ms. Crume repeatedly told the ALJ that all notes and reports from Nurse Hanks' office had been obtained and submitted to the record, and the ALJ held the record open to allow Ms. Crume to supplement the record with any additional records that might be available. Nurse Hanks' opinion in conclusory and unsupported by clinical evidence. "[A]n ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Further, Nurse Hanks' opinion is inconsistent with the clinical findings of treatment providers. *See* AR 387, 397, 402, 411, 418, 427, 433, 439, 445, 451, 456, 461, 466, 476, 480, 485, 491, 499, 501-02, 519, 565, 567, 573, 579, 581, 645, 711, 801. An ALJ may reject even a doctor's opinion when it is inconsistent with other

evidence in the record. *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 602-603 (9th Cir. 1999).

Accordingly, the Court finds the ALJ did not err in his consideration of Nurse Hanks' opinion.

### b. Rick Crume

The opinion testimony of Ms. Crume's husband, Rick Crume, falls under the category of "other sources." An ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague*, 812 F.2d at 1232. Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen*, 100 F.3d at 1467. An ALJ is obligated to give reasons germane to "other source" testimony before discounting it. *Dodrill*, 12 F.3d 915.

Mr. Crume stated that Ms. Crume has difficulty completing chores, maintaining friendships, leaving the house, and taking her medications. AR 369. The ALJ stated that he considered the statements by Mr. Crume, but that the medical evidence of record does not support finding greater limitations that those set forth in the residual functional capacity. AR 45. Inconsistency with medical evidence is a germane reason to discount other source opinion evidence. *Bayliss*, 427 F.3d at 1218. Additionally, the statements made by Mr. Crume are comparable to and generally reflect the same allegations made by Ms. Crume, which the ALJ

properly determined were not entirely credible. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (upholding the ALJ's rejection of a lay witness for the same reasons the ALJ rejected the claimant's credibility); *see also Molina*, 674 F.3d at 1117. Further, where the ALJ rejects a witness's testimony without providing germane reasons, but has already provided germane reasons for rejecting similar testimony, we cannot reverse the agency merely because the ALJ did not "clearly link his determination to those reasons." *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012).

The ALJ properly provided germane reasons for not fully crediting Mr. Crume's statements. Accordingly, the Court finds the ALJ did not err in his consideration of Mr. Crume's opinion.

## VIII.  Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 15,** is **GRANTED.**

///

///

3. Judgment shall be entered in favor of Defendant and the file shall be

**CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order,

forward copies to counsel and **close the file**.

**DATED** this 19th day of January, 2018.

_s/Robert H. Whaley_
ROBERT H. WHALEY
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 21